NIXON R. CALIX

VERSUS

IDEAL MARKET # 6, HAMDALLAH, L.L.C.,
KAKI AND SON, LLC., HAMDALLAH HASAN
"MARIO" KAKI, MUWAFAK "MIKE" KAKI,
MONADEL "CORY" ELBARQA, NOFAL
"GEORGE" HAIFA JOHN DOES 1-4, EL
CORTEZ FOODS, LLC, AND ABC & XYZ
INSURANCE COMPANY

NO. 21-CA-555

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 750-092, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

July 13, 2022

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and John J. Molaison, Jr.

**AFFIRMED**
    **JGG**
    **RAC**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
NIXON R. CALIX
    Kelly S. Rizzo
    John W. Redmann
    Edward L. Moreno

COUNSEL FOR DEFENDANT/APPELLEE-2ND APPELLANT,
KAKI & SON LLC D/B/A IDEAL MARKET #6; EL CORTEZ FOODS, LLC;
AND HAMDALLAH LLC
    Raymond A. Pelleteri, Jr.

COUNSEL FOR INTERVENOR/APPELLEE,
STATE FARM FIRE AND CASUALTY COMPANY
    Darrin M. O'Connor
    Ashley G. Haddad
    Emily S. Morrison

**GRAVOIS, J.**

In this case, State Farm Fire and Casualty Company filed a motion for partial summary judgment and a motion for summary judgment, arguing that it owed no duty to defend or indemnify defendants, Hamdallah, L.L.C., d/b/a Ideal Market #9, Kaki and Son, L.L.C., d/b/a Ideal Market #6, and El Cortez Foods, L.L.C. ("the LLCs"), against the claims asserted by plaintiff, Nixon Calix. The trial court granted the motion for partial summary judgment on January 10, 2020 and the motion for summary judgment on May 10, 2021, and dismissed all claims against State Farm with prejudice. Both the LLCs and Mr. Calix appeal the trial court's judgments. For the reasons that follow, we affirm the judgments under review.

## FACTS AND PROCEDURAL HISTORY

On May 28, 2015, Nixon Calix filed a petition for damages against Ideal Market #6, and others, alleging that while employed at Ideal Market #6, he was assaulted and battered by fellow employees who also threatened his life. Mr. Calix filed an amended petition against the same defendants on June 8, 2015.[1]

On March 22, 2018, Mr. Calix filed a Second Amended, Supplemental and Restated Petition for Damages, naming as defendants: Hamdallah Hasan Kaki ("Mario Kaki"), Mohammad Hasan Kaki, Muwafak Hasan Kaki, Mondel "Cory" Elbarqa,[2] Hamdallah, L.L.C., d/b/a Ideal Market #9, Kaki and Son, L.L.C., d/b/a Ideal Market #6, El Cortez Foods, L.L.C., and three unnamed liability insurers of the LLCs. The petition alleged that Mario Kaki and Muwafak Kaki held ownership interest in Kaki and Son, L.L.C, which operated Ideal Market #6;

---

[1] The allegations contained in Mr. Calix's original and first amended petitions for damages were superseded by the allegations contained in his Second Amended, Supplemental and Restated Petition for Damages, which are discussed in detail below.

[2] Mr. Elbarqa's nickname is also spelled "Corey" in several places in the record.

Hamdallah, L.L.C., which operated Ideal Market #9; and El Cortez Foods, L.L.C, located at 2309 L & A Road in Metairie, Louisiana.[3]

According to the facts alleged in the petition, Mr. Calix was an employee in the meat department at Ideal Market #6, where Mario Kaki, Mohammad Kaki, and Muwafak Kaki were also employed in managerial capacities. On April 29, 2015, Mohammad Kaki and Cory Elbarqa transported Mr. Calix to 2309 L & A Road. There, Mr. Calix was accused of stealing meat from Ideal Market #6 and was "subjected to a violent physical assault and/or battery" by Mario Kaki, Mohammad Kaki, and Cory Elbarqa. Mario Kaki brandished a firearm, pointed it at Mr. Calix, and threatened to kill him if he did not confess to the alleged theft. When Mr. Calix refused to confess, Mario Kaki used the firearm as well as his fists and legs to beat Mr. Calix's head, face, and body for approximately four hours. Mr. Calix claimed that he was "severely beaten, punched, kicked, abused, and terrorized" by Mario Kaki while Mohammad Kaki and Cory Elbarqa watched and prevented him from leaving. As a result, Mr. Calix alleged that he suffered severe mental and physical injuries.

Mr. Calix alleged in the petition that his injuries were caused by the following "intentional acts" of Mario Kaki, Mohammad Kaki, and Cory Elbarqa: assault, battery, kidnapping, false imprisonment, and intentional infliction of emotional distress. Additionally, Mr. Calix claimed that the LLCs were vicariously liable under the doctrine of *respondeat superior* for the derivative liability, negligence, and fault of its employees, and were liable individually, jointly, severally, and *in solido* through their own negligence, specifically for negligent hiring, negligent training, negligent supervision, and negligent retention.

---

[3] The petition alleged that the three LLCs were owned and operated as a common and/or single business enterprise that operated out of 2309 L & A Road.

21-CA-555                                        2

On May 8, 2019, State Farm, the liability insurer of the LLCs, filed a petition for intervention, seeking a declaration that the three insurance policies issued by State Farm to the LLCs precluded coverage for the acts alleged in the lawsuit and that it had no duty to defend the claims.

Subsequently, State Farm filed a motion for partial summary judgment in which it argued that the three insurance policies issued to the LLCs do not provide coverage for bodily injury resulting from an intentional or expected injury or a willful and malicious or criminal act of the insured. Given the policy language, State Farm argued that the intentional acts of assault, battery, kidnapping, false imprisonment, and intentional infliction of emotional distress alleged by Mr. Calix against the LLCs and their members, officers, managers, and/or employees are excluded from coverage. Additionally, State Farm argued that if the alleged acts are found to be acts of negligence, then Mr. Calix's remedy as an employee against an employer for injuries arising during the course and scope of employment is workers' compensation under the provisions of La. R.S. 23:1032. In support of its motion, State Farm attached as an exhibit the affidavit of Carolyn Michener, a representative of State Farm, certifying that the three State Farm policies were in effect on April 29, 2015 and are true and accurate records of State Farm.

Both the LLCs and Mr. Calix opposed the motion for partial summary judgment. Following a hearing on January 8, 2020, the trial court signed a written judgment on January 10, 2020, granting State Farm's motion for partial summary judgment. The trial court found:

> The policies of insurance at issue exclude coverage for bodily injury expected or intended to cause harm or which is the result of willful and malicious, or criminal acts. Thus, the policies exclude coverage of any liability imposed on defendants arising from plaintiff's claims of assault, battery, kidnapping, false imprisonment and/or intentional infliction of emotional distress alleged against Hamdallah Hasan Kaki, Mohammad Hasan Kaki, Muwafak Hasan Kaki, and Monadel Elbarqa. Furthermore, to the extent the actions of Hamdallah Hasan Kaki, Mohammad Hasan Kaki, Muwafak Hasan

Kaki, and Monadel Elbarqa are deemed to be negligent, any liability imposed on defendants arising from their alleged actions are barred from coverage as bodily injury to a co-employee and/or by the workers' compensation exclusions. Because the policies do not offer coverage to Hamdallah Hasan Kaki, Mohammad Hasan Kaki, Muwafak Hasan Kaki, or Monadel Elbarqa for their alleged actions at issue in this lawsuit, the policies to not offer coverage to Kaki & Son, L.L.C., El Cortex Food, L.L.C., or Hamdallah, L.L.C. for any vicarious liability stemming from the employees' actions.

… The State Farm policies do not provide coverage to any defendant for liability which may be imposed on defendants as a result of plaintiff's claims alleged directly against Hamdallah Hasan Kaki, Mohammad Hasan Kaki, Muwafak Hasan Kaki, or Monadel Elbarqa for bodily injury sustained from the employees' intentional or negligent acts. This judgment does not extend to plaintiff's claims for damages for negligence alleged directly against Hamdallah, L.L.C., Kaki and Son, L.L.C., and El Cortez Foods, L.L.C., including but not limited to, plaintiff's claims of negligent hiring, negligent training, negligent supervision, and negligent retention. The court makes no determination at this time regarding coverage of plaintiff's alleged damages resulting from claims made directly against Hamdallah, L.L.C., Kaki and Son, L.L.C., and El Cortez Foods, L.L.C.

Mr. Calix subsequently filed a writ application challenging this ruling, which this Court did not consider. *Calix v. Ideal Market #6*, 20-116 (La. App. 5 Cir. 4/30/20) (unpublished writ disposition).

On November 12, 2020, State Farm filed a motion for summary judgment alleging that there is no coverage under its policies for the claims against the LLCs for negligent hiring, negligent training, negligent supervision, and/or negligent retention. State Farm attached the deposition of Mr. Calix in which he testified that Mario Kaki was the only employee that hit and attacked him. State Farm argues that any liability based on negligent supervision stems from Mario Kaki's intentional actions against Mr. Calix and the claims for negligent hiring are just a "back door approach" to seeking coverage.

Mr. Calix and the LLCs opposed the motion for summary judgment. A hearing on the motion was conducted on April 16, 2021. On May 10, 2021, the trial court signed a written judgment granting the motion for summary judgment and dismissing all of Mr. Calix's remaining claims against State Farm with

prejudice. In written reasons for judgment dated June 14, 2021, the trial court found that "irrespective of the legal theory argued by [Mr. Calix], the intentional actions of the owners/managers of the defendant companies, in particular the actions of Mario Kaki, are the essential cause of [Mr. Calix's] alleged damages. Coverage for these actions is specifically excluded by the policies." This appeal followed.

## LAW

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *King v. Illinois Nat. Ins. Co.*, 08-1491 (La. 4/3/09), 9 So.3d 780, 784.

Appellate courts review summary judgments *de novo* using the same criteria applied by trial courts to determine whether summary judgment is appropriate. *Pizani v. Progressive Ins. Co.*, 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. A *de novo* review or an appeal *de novo* is an appeal in which the appellate court uses the trial court's record, but reviews the evidence and law without deference to the trial court's rulings. *Sarasino v. State through Department of Public Safety and Corrections*, 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 928. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Muller v. Carrier Corp.*, 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885.

A dispute as to the issue of whether, as a matter of law, the language of an insurance policy provides coverage to a party, can properly be resolved within the

context of a motion for summary judgment. *Domingue v. Reliance Ins. Co.*, 619 So.2d 1220, 1223 (La. App. 3d Cir. 1993). An insurer seeking to avoid coverage through summary judgment bears the burden of proving the applicability of an exclusion within a policy. *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So.2d 119, 124, *modified on other grounds on reh'g*, 00-0947 (La. 3/16/01), 782 So.2d 573. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Beck v. Burgueno*, 43,557 (La. App. 2 Cir. 9/17/08), 996 So.2d 404, 409.

An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. *Mattingly v. Sportsline, Inc.*, 98-230 (La. App. 5 Cir. 10/28/98), 720 So.2d 1227, 1229, *writ denied*, 98-2938 (La. 1/29/99), 736 So.2d 830; *Ledbetter v. Concord General Corp.*, 95-0809 (La. 1/6/96), 665 So.2d 1166. The extent of coverage is determined by the parties' intent, as reflected by the words of the policy. *Id.* Unless the words of the policy have acquired a technical meaning, the words used in the policy will be construed using their plain, ordinary and generally prevailing meaning. La. C.C. art. 2047; *Louisiana Ins. Guar. Ass'n. v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So.2d 759. The agreement must be enforced as written if the policy wording at issue is clear and expresses the intent of the parties. *Ledbetter*, *supra*; *Pareti v. Sentry Indem. Co.*, 536 So.2d 417 (La. 1988).

An insurance company may limit coverage in any manner, as long as the limitations do not conflict with statutory provisions or public policy. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1883. The exclusionary provisions of an insurance contract are strictly construed against the

insurer, and any ambiguity in the exclusion is construed in favor of the insured.

*Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975 (La. 1991).

## POLICY PROVISIONS

The pertinent provisions of the subject policies are as follows.[4]

## SECTION II – LIABILITY

**Coverage L – Business Liability**

1. When a Limit of Insurance is shown in the Declarations for **Coverage L - Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury'', "property damage" or "personal and advertising injury'' to which this insurance applies. We will have the right and duty to defend the insured by counsel of our choice against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" if all of the allegations of the "suit" are explicitly excluded by this insurance. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" with or without the insured's consent, for any reason and at any time.

* * *

**Section II – Exclusions**

Applicable to **Coverage L - Business Liability**, this insurance does not apply to:

1. **Expected or Intended Injury**

   a. "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or

   b. "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured.

   This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

* * *

---

[4] The pertinent provisions are the same in each of the subject policies.

**4. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**5. Employer's Liability**

a. "Bodily injury" to:

(1) An "employee" or a former "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

b. This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an "insured contract".

\* \* \*

**Section II – Who Is An Insured**

1. Except for liability arising out of the use of "non-owned autos":

a. If you are designated in the Declarations as:

\* \* \*

(3) A limited liability company, you are an insured. Your "members" are also insureds, but only with respect to the conduct of your business. Your "managers" are insureds, but only with respect to their duties as your "managers".

\* \* \*

b. Each of the following is also an insured:

(1) Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your "managers" (if you are a limited liability company), but

only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(a) "Bodily injury" or "personal and advertising injury":

I. To you, to your partners or members (if you are a partnership or joint venture), to your "members" (if you are a limited liability company), to a co"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

* * *

**Section II – Definitions**

* * *

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury caused by the "bodily injury".

## ANALYSIS

On appeal, Mr. Calix and the LLCs contend that the trial court erred in granting both the motion for partial summary judgment on January 10, 2020 and the motion for summary judgment on May 10, 2021.

Mr. Calix argues that in the week preceding the incident, there was a series of "broader acts and omissions" that gave rise to the incident and the "expected and intended injury" exclusion does not apply since a substantial part of his injuries did not arise from an intention to cause harm, but rose to a level of harm over the course of a week. Additionally, Mr. Calix argues that the "expected or intended injury" exclusion does not apply to preclude vicarious liability or liability premised on *respondeat superior*. Finally, he contends that State Farm failed to meet its burden in its second motion for summary judgment because his injuries arose out of negligent hiring, training, supervision, and/or retention over multiple employees of multiple employers and not a single event and action of one person.

The LLCs contend that genuine issues of material fact remain regarding whether the acts and resulting injury were intended by the insured and whether the employees' tortious conduct was within the course and scope of their employment for the employer to be vicariously liable. Nonetheless, the LLCs argue that they are "the insureds" under the policies, not the employees, and since they did not expect or intend the injury to Mr. Calix, they are not precluded from being insured against the intentional acts of their employees. They argue that there is coverage under the policies for Mr. Calix's claims of negligent hiring, negligent training, negligent supervision, and negligent retention.

The State Farm policies contain an exclusion for expected or intended injury, which provides:

**1. Expected or Intended Injury**

a. "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or

b. "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured.

The LLCs argue that this exclusion for "expected or intended injury" is not an intentional act exclusion, but is an intentional injury exclusion that has been found to be ambiguous. They argue that for an intentional injury exclusion, whether or not the act and injury were intended by the insured is a question of fact to be determined by the trier of fact.

In support of their argument, the LLCs cite to *Breland v Schilling*, 550 So.2d 609 (La. 1989) and *Love v. Sirey*, 12-823 (La. App. 5 Cir. 5/30/13), 119 So.3d 732. In *Love*, the policy language excluded coverage for bodily injury which is either "expected or intended *by the insured*." (Emphasis added.) There, this Court determined that because the insurance policy contained an intentional injury exclusion, a genuine issue of material fact existed as to the subjective intent of the alleged tortfeasor that precluded summary judgment under an intentional injury

exclusion. *Id*. at 739-40. This Court cited to *Breland*, where the Supreme Court

stated:

> This clause does not by its precise terms exclude coverage for bodily injury caused by the insured's intentional act. Rather, it excludes coverage for bodily injury "expected or intended from the standpoint of the Insured." The phrase "bodily injury ... which is expected or intended," emphasizes that an excluded injury is one which the insured *intended*, not one which the insured *caused*, however intentional the injury-producing act. The next phrase, "from the standpoint of the Insured," emphasizes again that it is the insured's subjective intention and expectation which delimit the scope of the exclusion. The subjective intention and expectation of the insured determine which injuries fall within and which fall beyond the scope of coverage under this policy.
>
> This inquiry into the subjective intention or expectation of the insured contrasts sharply with the traditional tort inquiry into an actor's intent. The Restatement (Second) of Torts describes intended consequences as those which the actor knows are "substantially certain" to result from an act, whether the actor consciously desires those consequences or not. Restatement (Second) of Torts § 8A (1965); see also W. Prosser, Law of Torts § 8 (4th ed. 1971). While the inquiry regarding intentional torts asks which consequences an objective reasonable person might expect or intend as the result of a deliberate act, we are concerned, under the language of this insurance contract, with the injury subjectively intended or expected by the insured.

*Breland*, 550 So.2d at 611. (Footnote omitted.) (Emphasis in the original.)

Upon review, we find these cases distinguishable, however, from the present

case. In *Breland* and *Love*, the courts considered the specific policy language,

which excluded coverage for bodily injury which is either expected or intended "*by*

*the insured*" or "*from the standpoint of the insured.*" In the present case, the policy

language excludes coverage for bodily injury "expected or intended to cause harm

as would be expected by a reasonable person." Upon review, we find that

reasonable minds would not disagree that, accepting the allegations of the petition

as true, Mario Kaki's actions of using a firearm as well as his fists and legs to beat

Mr. Calix's head, face, and body for approximately four hours were expected or

intended to cause bodily injury. Accordingly, we find no error in the trial court's

finding that the policies exclude coverage of any liability imposed on any

defendants arising from Mr. Calix's claims of assault, battery, kidnapping, false imprisonment, and/or intentional infliction of emotional distress alleged against Mario Kaki, Mohammad Kaki, Muwafak Kaki, and Cory Elbarqa.

Mr. Calix argues on appeal that this exception does not apply since it was the acts and omissions of the store managers, Sam Zaben and Cory Elbarqa, that gave rise to his damages in a "but for" way. Mr. Calix claims that their inability to properly investigate the meat theft and determine who was responsible, as well as their decision to refer the matter to Mario Kaki and to transport him to another facility, all created the peril that gave rise to his injuries.

While Mr. Calix now claims that it was the managers' failure to properly investigate the alleged theft in the week preceding the incident that gave rise to his injuries, in the petition for damages he alleged that he was subjected to a "violent physical assault and/or battery" by defendants. He alleged that Mario Kaki brandished him with a firearm and threatened to kill him if he would not admit to stealing the meat. He specifically claimed that his injuries were caused by the "intentional acts" of Mario Kaki, Mohammad Kaki and Cory Elbarqa, which include: assault, battery, kidnapping, false imprisonment, and intentional infliction of emotional distress. Accordingly, we find no merit to this argument.

In any event, as the trial court correctly pointed out in its judgment, even if defendants' actions are deemed to be negligent, any liability imposed on defendants arising from their alleged actions are excluded from coverage based on bodily injury to a co-employee. The policies define who is an insured as follows:

**Section II – Who Is An Insured**

1. Except for liability arising out of the use of "non-owned autos":

    a. If you are designated in the Declarations as:

    * * *

    (3) A limited liability company, you are an insured. Your "members" are also insureds, but only with respect to

the conduct of your business. Your "managers" are insureds, but only with respect to their duties as your "managers".

\* \* \*

b. Each of the following is also an insured:

(1) Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your "managers" (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(a) "Bodily injury" or "personal and advertising injury":

I. To you, to your partners or members (if you are a partnership or joint venture), to your "members" (if you are a limited liability company), *to a co"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business*;

(Emphasis added.)

Mr. Calix alleged in his petition for damages that both he and the defendant/managers were employed by Ideal Market #6, and they were in the course and scope of their employment on April 29, 2015, when he was physically assaulted. Thus, the defendant/managers are not "insureds" under this policy language for the bodily injuries they caused to Mr. Calix.

Having found that the policies exclude coverage for the intentional acts of the employees/managers, we find that the policies do not provide coverage to the LLCs for any vicarious liability based on the employees' actions.

On appeal, Mr. Calix argues that jurisprudence supports the argument that an intentional injury inflicted by an employee does not preclude coverage for the vicarious liability of the employer. In support, he cites to *Rivers v. Brown*, 168 So.2d 400 (La. App. 3d Cir. 1964), *writ refused*, 247 La. 250, 170 So.2d 509

(1965).  In *Rivers*, the plaintiff alleged that he was pistol whipped and kicked by an employee who was the president, principal stockholder, and superintendent of construction for the defendant employer.  The insurer argued that coverage was excluded based on a policy exclusion that excluded any assault and battery committed "by or at the direction of the insured."  *Id*. at 401.  The court, considering the specific language of the exclusion, found that the policy only excluded assaults committed by or at the direction of the *named insured* and thus, the court found that the policy did not exclude coverage for the employee's actions since he was just an omnibus insured and not the named insured.  *Id*. at 401-02.

Upon review, we find that *Rivers* is factually distinguishable from the present case since, again, the court there considered the specific policy language of the exclusion, which differs from the policy language in the present case.  Unlike in *Rivers*, we have found that based on the policy language in the present policies, the intentional actions of the employees are excluded from coverage.  Thus, we find no merit to Mr. Calix's argument in this regard.

Finally, Mr. Calix and the LLCs also argue that the trial court erred in granting the second motion for summary judgment since genuine issues of material fact remain regarding coverage for Mr. Calix's claims against the LLCs for negligent hiring, negligent training, negligent supervision, and negligent retention.

In its reasons for judgment in granting the second motion for summary judgment, the trial court relied on and citied to *Huey T. Littleton Claims, Inc. v. Employers Reinsurance Corp.*, 933 F.2d 337 (5th Cir. 1991).  In *Littleton*, the insured/employer sought to be indemnified by its insurer for the acts of one of its employees.  It was determined that the employee's actions were excluded under Section IV of the policy that stated: "[t]his policy does not apply to: (a) any dishonest, fraudulent, illegal, criminal, or malicious act, other than malicious prosecution."  The insured argued that notwithstanding this exclusion, the policy

should provide coverage for its "'negligent acts or omissions which may have resulted in [the employee's] embezzlement of funds from clients of the service'—that is to say, for [the insured's] independent negligence (if any)." The court found that the exclusion precludes coverage for the insured when its liability for the loss is based upon the excluded conduct of its employee. The court stated:

> … Irrespective of the legal theory through which [the insured's] clients proceed against it—whether vicarious tort liability, independent tort liability, or even contractual liability—[the employee's] perfidy remains an essential if not the legal proximate cause of the clients' damage. Alternatively stated, regardless of why [the insured] is held liable, any claim it files with [the insurer] will in the end stem from [the employee's] "dishonest," "criminal" act—expressly excluded under Section VI.

*Id*. at 339.

The court in *Littleton* found support in the Louisiana Supreme Court's decision in *Lamkin v. Brooks*, 498 So.2d 1068 (La. 1986). In *Lamkin*, the Supreme Court, after finding that the insured was vicariously liable for the intentional acts of its employee, concluded it did not need to reach the issue of "independent negligence." The court then found that the intentional act exclusion in the insured's policy precluded the insured from obtaining indemnification from the insurer. The court in *Littleton* stated:

> … If the supreme court had taken the path [the plaintiff] urges us to follow—where independent negligence can afford coverage even when vicarious liability expressly cannot—it would have *had* to address the question of the town's independent negligence. The fact that the *Lamkin* court did not strongly implies that underlying negligence on the part of the employer has no bearing on the scope of a policy when an employee for whom the employer is vicariously liable commits acts (or omissions) falling squarely within an exclusionary clause.

*Littleton*, 933 F.2d at 340. (Footnote omitted.) (Emphasis in the original.)

Upon review, we too find these cases persuasive, and thus find no error in the trial court's judgment granting the second motion for summary judgment. In support of the second motion for summary judgment, State Farm included Mr. Calix's deposition, in which he testified that Mario Kaki was responsible for

attacking him and threatening his life. Any claims that the LLCs are liable based on claims of negligent hiring, negligent training, negligent supervision, and negligent retention stem from or are dependent on Mario Kaki's actions. Therefore, we find there is no coverage under the present insurance policies based on allegations of negligence for damages resulting from Mario Kaki's intentional acts.

## DECREE

For the foregoing reasons, we affirm the trial court's judgments which granted State Farm's motion for partial summary judgment and motion for summary judgment and dismissed all claims against State Farm.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 13, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

## 21-CA-555

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
BENJAMIN B. PERKINS (APPELLANT)      EDWARD L. MORENO (APPELLANT)      KELLY S. RIZZO (APPELLANT)
RAYMOND A. PELLETERI, JR. (APPELLANT)   EMILY S. MORRISON (APPELLEE)

### MAILED

CHRISTIAN A. GALLEGUILLOS          ASHLEY G. HADDAD (APPELLEE)
(APPELLANT)                        DARRIN M. O'CONNOR (APPELLEE)
JOHN W. REDMANN (APPELLANT)        ATTORNEYS AT LAW
LISA Z. GILMORE (APPELLANT)        408 NORTH COLUMBIA STREET
TRAVIS J. CAUSEY, JR. (APPELLANT)  COVINGTON, LA 70433
ATTORNEYS AT LAW
1101 WESTBANK EXPRESSWAY
GRETNA, LA 70053